Samuel C. Kauffman, OSB #94352
GARVEY SCHUBERT BARER
121 S.W. Morrison, 11th Floor
Portland, Oregon 97204-3141
Telephone: (503) 228-3939
Facsimile: (503) 226-0259
Email: skauffman@gsblaw.com

      Attorneys for Defendant

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>    Plaintiff,<br><br>v.<br><br>**HAROLD JAMES NICHOLSON,**<br><br>    Defendant. | Case No. CR 09-40-1 (BR)<br><br>**MOTION TO SUPPRESS FISA-DERIVED EVIDENCE OR IN THE ALTERNATIVE TO DISCLOSE FISA MATERIALS** |

Defendant Harold James Nicholson by and through counsel hereby moves this court to suppress all the evidence collected pursuant to and derived from surveillance and searches authorized under the Foreign Intelligence Surveillance Act (FISA), 50 U.S.C. § 1801, et seq., on the grounds that such evidence was illegally acquired and that the searches and surveillance were not made in conformity with an order of authorization or approval. 50 U.S.C. §§ 1806(e), 1825(f). In the alternative, the FISA information produced by the government for *in camera* review should be disclosed to defense counsel on the ground that review of the information by

**MOTION TO SUPPRESS FISA-DERIVED EVIDENCE OR IN THE ALTERNATIVE TO DISCLOSE FISA MATERIALS**

defense counsel is necessary for the Court to be able to make an accurate determination of the legality of the surveillance.

I.      **Introduction**

From the discovery provided by the government thus far, it appears that the government filed at least two FISA applications and that at least two orders were issued by the Foreign Intelligence Surveillance Court, one authorizing electronic surveillance of Nathaniel Nicholson, and another authorizing the physical searches of his home and car.  There may be additional applications, orders or extensions that have not been disclosed to Mr. Nicholson.  These FISA searches and surveillance were probably authorized on or about October of 2007.

On August 11, 2009, Mr. Nicholson filed a motion for disclosure of all FISA applications and orders.  On February 19, 2010, the government apparently filed the FISA applications and orders under seal for *in camera* review (Notice at Doc. 114), a Memorandum in Opposition to Defendant's Motion for Disclosure of FISA Applications and Orders and, among other things, a "Declaration and Claim of Privilege from the Attorney General of the United States" in which Attorney General Holder certified that it would "harm the national security of the United States to publicly disclose or have an adversarial hearing with respect to the FISA Materials."  (Doc. 113 at 46).

First, the Court should disclose the FISA applications and orders to defense counsel despite the government's objection and the Attorney General's claim of privilege.  As an initial matter, the Attorney General does not claim or certify that disclosure of the FISA materials to defense counsel (who has a "top secret" security clearance), in a secure setting or a closed proceeding before the Court, would harm the national security of the United States.  He merely claims that "public disclosure or an adversary hearing" would be harmful.  Thus, the Attorney

**MOTION TO SUPPRESS FISA-DERIVED EVIDENCE OR IN THE ALTERNATIVE**
**TO DISCLOSE FISA MATERIALS**

General's certification should not trigger the automatic *ex parte* review provisions of 50 U.S.C. §§1806(f), 1825(g).   Accordingly, the Court should order that the materials be disclosed for defense counsel's review and classified briefing regarding the Motion to Suppress.

If the Court concludes that the Attorney General has made an adequate certification to require an *ex parte* review of the materials, Mr. Nicholson provides below the standards for the Court to employ in reviewing those materials, including the scope of the Court's review, the criteria for suppressing evidence derived pursuant to FISA, the considerations given *Franks* and *Leon*, and the Court's review of the government's compliance with the FISA orders and minimization requirements.

Finally, if the Court does not order suppression based upon its own review of the applications, orders and materials, Mr. Nicholson moves for disclosure of the materials to defense counsel on the ground that portions of the applications, orders or other materials are necessary for the Court to make an adequate determination of the legality of the surveillance.  50 U.S.C. §§1806(f), 1825(g).  The circumstances underlying the FISA surveillance in this case are particularly complicated given that the target of the surveillance was a United States citizen, most if not all of the surveillance occurred within the United States, the surveillance involved communications potentially protected by the First Amendment, among other factors. Accordingly, the Court should order disclosure to defense counsel of portions of the applications, orders or other materials.

## II.    The Attorney General's Declaration is insufficient to require *in camera* review

50 USC §§1806(f), 1825(g) provide in relevant part:

//

//

**MOTION TO SUPPRESS FISA-DERIVED EVIDENCE OR IN THE ALTERNATIVE
TO DISCLOSE FISA MATERIALS**

> …if the Attorney General files an affidavit under oath that
> <u>disclosure or an adversary hearing</u> would harm the national
> security of the United States, [the court shall] review *in camera*
> and *ex parte* the application, order, and such other materials
> relating to the surveillance as may be necessary to determine
> whether the surveillance of the aggrieved person was lawfully
> authorized and conducted.

(Emphasis Supplied).

The government attached to its unclassified memorandum in opposition to the motion for

disclosure of FISA materials, the Declaration of Attorney General Eric Holder.  (Doc. 113 at 45).

Among other things, Attorney General Holder declares:

> Based on the facts and considerations set forth below, I hereby
> claim that it would harm the national security of the United States
> to <u>publicly disclose</u> or have an adversarial hearing with respect to
> the FISA Materials.

(Emphasis Supplied).

Importantly, Attorney General Holder does not claim that "disclosure" of this information

would harm the national security of the United States; he claims that such harm would be caused

by "public disclosure."  Under the circumstances the Court can assume that the Attorney General

considered the potential review of these materials by defense counsel (who has a "top secret"

security clearance) in a secure, non-public setting and was unconcerned about the impact of such

a review on the security of the United States.  Regardless, the Attorney General did not make a

sufficient certification to require an *ex parte* review pursuant to 50 USC §§1806(f), 1825(g) and

the Court should therefore disclose the material to defense counsel in a secure setting.

**III.      Standard of review for FISA materials**

If the Court concludes that an ex parte review of the materials is required, Mr. Nicholson

provides the following to assist the Court in its review.

**MOTION TO SUPPRESS FISA-DERIVED EVIDENCE OR IN THE ALTERNATIVE
TO DISCLOSE FISA MATERIALS**

## A.    De novo review

The court should review the FISA applications and orders de novo. *United States v. Hammoud*, 381 F.3d 316, 332 (4th Cir. 2004) (noting district court's de novo review and conducting its own de novo review of FISA materials), *vacated on other grounds*, 543 U.S. 1097 (2005); *United States v. Squillacote*, 221 F.3d 542, 554 (4th Cir. 2000) (same); *see also United States v. Campa*, 529 F.3d 980, 991 (11th Cir. 2008).

A reviewing court essentially conducts the same review of the FISA application and associated materials that the Foreign Intelligence Surveillance Court (FISC) judge initially conducted upon receiving an application requesting an order under FISA. *In re Grand Jury Proceedings of Special April 2002 Grand Jury*, 347 F.3d 197, 204-05 (7th Cir. 2003); *United States v. Mubayyid*, 521 F.Supp.2d 125, 131 (D. Mass. 2007). As such, the court reviews, first, the adequacy of the FISA materials at issue "de novo with no deference accorded to the FISC's probable cause determinations," and second, the executive branch's certifications, which are reviewed for clear error. *United States v. Rosen*, 447 F.Supp.2d 538, 545 (E.D. Va. 2006).

There are important reasons for engaging in de novo review of FISA materials. *In camera, ex parte* review was triggered by the government's submission of the Attorney General's affidavit. 50 U.S.C. §§ 1806(f), 1825(g). Under these circumstances, de novo review is necessary because the reviewing court's consideration of the FISA materials is "unaided by the adversarial process." *United States v. Rosen*, 447 F.Supp.2d 538, 545 (E.D. Va. 2006) (rejecting the government's contention that the FISC's probable cause determination should be accorded "substantial deference"); *United States v. Warsame*, 547 F.Supp.2d 982, 990 (D. Minn. 2008) (same).

//

**MOTION TO SUPPRESS FISA-DERIVED EVIDENCE OR IN THE ALTERNATIVE TO DISCLOSE FISA MATERIALS**

The FISA process is exceptionally one-sided in nature.  *Warsame*, 547 F.Supp.2d at 987. In this instance, for example, the government has the opportunity to argue that the facts contained in the affidavit are sufficient to support probable cause, while the defense is barred from articulating the opposing view because they are forbidden from accessing the requisite information.  The court therefore must function as a stand-in for defense counsel with respect to the assessment of these FISA materials.

Finally, courts repeatedly cite the presence of judicial intermediary as an essential reason why FISA passes constitutional muster.  *See, e.g. United States v. Cavanagh*, 807 F.2d 787, 791 (9th Cir. 1987); *United States v. Duggan*, 743 F.2d 59, 73-74 (2nd Cir 1984); *United States v. Belfield*, 692 F.2d 141, 148 (D.C. Cir. 1982) ("In FISA the privacy rights of individuals are ensured *** through its provisions for in-depth oversight of FISA surveillance by all three branches of government"). This judicial intermediary is, in the first instance, the FISC judges and the probable cause assessment they must make.  In the criminal context, however, reviewing courts serve as such an intermediary as well.

### B.    When FISA evidence must be suppressed or disclosed

In this instance, the court is to determine the lawfulness of the surveillance authorized under FISA.  The court reviews the probable cause determination, the executive branch certifications, and the conduct of the subsequent surveillance.  If the court determines that the electronic surveillance or physical search "was not lawfully authorized or conducted, it shall *** suppress the evidence which was unlawfully obtained or derived from the electronic surveillance or physical search of the aggrieved person." 50 U.S.C. §§ 1806(g) (electronic surveillance), 1825(h) (physical search).

//

**MOTION TO SUPPRESS FISA-DERIVED EVIDENCE OR IN THE ALTERNATIVE TO DISCLOSE FISA MATERIALS**

Even if the evidence is not suppressed, the court must disclose FISA materials to the defense if "due process requires discovery or disclosure" of the materials it examines.  50 U.S.C. §§ 1806(g), 1825(h).  Additionally, if the court cannot make an accurate determination of the legality of the surveillance or search the court "may disclose to the aggrieved person, under appropriate security procedures and protective orders, portions of the application, order, or other materials relating to the surveillance only where such disclosure is necessary to make an accurate determination of the legality of the surveillance." 50 U.S.C. §§ 1806(f), 1825(g) (physical search).

A number of factors may bring the legality of FISA-authorized searches into question. Disclosure and an adversary hearing are necessary where the court's initial review of the application, order, and fruits of the surveillance or search:

> indicates that the question of legality may be complicated by factors such as indications of possible misrepresentations of fact, vague identifications of the persons to be surveilled, or surveillance records which include a significant amount of nonforeign intelligence information, calling into question compliance with the minimization standards contained in the order.

*United States v. Belfield*, 692 F.2d 141, 147 (D.C. Cir. 1982) (internal quotation and footnote omitted); *see also United States v. Ott*, 827 F.2d 473, 476 (9th Cir. 1987).

Reviewing courts should be "mindful of possible biases when [] assess[ing] the adequacy of the government's allegations," since the officials charged with overseeing such operations have a professional interest in their success. *Ott*, 827 F.2d at 476.  Because of the one-sided nature of the *ex parte* review of FISA materials, the reviewing court functions as the only guardian of a criminal defendant's constitutional and statutory rights.

//

**MOTION TO SUPPRESS FISA-DERIVED EVIDENCE OR IN THE ALTERNATIVE TO DISCLOSE FISA MATERIALS**

FISA was designed with foreign intelligence information in mind, and "a significant purpose" of FISA surveillance and searches must be "to obtain foreign intelligence information." 50 U.S.C. §§ 1804(a)(6)(B), 1823(a)(6)(B).  Although the statute contemplates that the information so collected may be used in the criminal justice context, *id*. §§ 1806(d), 1825(d), the foreign policy purpose of the surveillance should be plainly apparent.  *See Belfield*, 692 F.2d at 147.

In this instance, Mr. Nicholson is extremely limited in his ability to challenge the FISA application and order, and the conduct of the subsequent surveillance because he has been barred access to those materials.  In what follows, the defense will lay out its view of the nature and scope of the court's review.

## IV.    Review of FISA application

### A.    Probable cause to believe that the target is an "agent of a foreign power"

The probable cause assessment is the core substantive judicial determination that a FISC judge must make in authorizing foreign intelligence surveillance under the Act. 50 U.S.C. §§ 1805(a), 1825(a).  Special care should therefore be taken at this crucial point.  The FISC judge's probable cause assessment is not entitled to deference.  *Warsame*, 547 F.Supp.2d at 990; *Mubayyid*, 521 F.Supp.2d at 131; Rosen, 447 F.Supp.2d at 545.  FISA specifies that:

> [i]n determining whether or not probable cause exists *** a judge may consider past activities of the target, as well as facts and circumstances relating to current or future activities of the target.

50 U.S.C. §§ 1805(b), 1825(b).  Since the government has represented that the target of the FISA surveillance was Nathaniel Nicholson, probable cause must be shown with respect to Nathaniel.

**MOTION TO SUPPRESS FISA-DERIVED EVIDENCE OR IN THE ALTERNATIVE TO DISCLOSE FISA MATERIALS**

As such, it is his own "past activities" that are relevant to the probable cause determination, and not Harold Nicholson's past activities.

The substantive standard for probable cause is specific to FISA.  *See, e.g. Warsame*, 547 F.Supp.2d at 992-94.  Instead of directing a judge or magistrate to find probable cause to believe that a crime was committed, a FISC judge must find that there is probable cause to believe that the target is a foreign power or agent of a foreign power and that the facilities or locations sought to be searched are being used by a foreign power or agent of a foreign power. *Id*.; 50 U.S.C. § 1805(a)(2).  An order approving an electronic surveillance under FISA must be based on the finding that:

> on the basis of the facts submitted by the applicant there is probable cause to believe that --
>
> (A)      the target of the electronic surveillance is a foreign power or an agent of a foreign power: Provided, that no United States person may be considered a foreign power or an agent of a foreign power solely upon the basis of activities protected by the first amendment of the Constitution of the United States; and
>
> (B)      each of the facilities or places at which the electronic surveillance is being directed is being used, or is about to be used, by a foreign power or an agent of a foreign power.
>
> 50 U.S.C. § 1805(a)(2).  The same probable cause finding is also required for physical searches, except that the judge must find that "the premises or property to be searched is or is about to be owned, used, possessed by, or is in transit to or from an agent of a foreign power or a foreign power."

50 U.S.C. §1824(a)(2).

"Agent of a foreign power," in turn, means any person who:

> (A)      knowingly engages in clandestine intelligence gathering activities for or on behalf of a foreign power, which activities involve or may involve a violation of the criminal statutes of the United States; [or]

**MOTION TO SUPPRESS FISA-DERIVED EVIDENCE OR IN THE ALTERNATIVE TO DISCLOSE FISA MATERIALS**

> (B)      pursuant to the direction of an intelligence service or
> network of a foreign power, knowingly engages in any other
> clandestine intelligence activities for or on behalf of such foreign
> power, which activities involve or are about to involve a violation
> of the criminal statutes of the United States; ***

50 U.S.C. §§ 1801(b)(2), 1821(1).[1]

Other persons may be agents of a foreign power if they aid, abet, or conspire to engage in such activities. *Id*. The case law does not provide much guidance regarding the factors to consider in this determination, because the courts may not discuss the bases for their conclusions that there was probable cause to believe that a given target was an agent of a foreign power. *See, e.g. United States v. Dumeisi*, 424 F.3d 566, 579 (7th Cir. 2005); *United States v. Isa*, 923 F.2d 1300, 1304 (8th Cir. 1991) (declining to comment on the probable cause issue where the Attorney General filed an affidavit and claim of privilege); *Squillacote*, 221 F.3d at 554 (same).

According to the definition above, therefore, there is probable cause to believe a person is an agent of a foreign power if there is probable cause to believe they (1) knowingly engage in clandestine intelligence gathering activities, and (2) such activities *involve or may involve* a criminal offense, or, if the target engaged in clandestine intelligence gathering activities pursuant to the direction of an intelligence agency, such activities *involve or will involve* a criminal offense. 50 U.S.C. § 1801(b)(2) (emphases supplied).

Since the definition of "agent of a foreign power" requires engaging in activities which involve, may involve, or will involve a violation of a criminal statute, a reviewing court should examine the application to ensure that it specifies the criminal statutes that are or are likely to be

---

[1] The government does not dispute that Nathaniel and Harold Nicholson are citizens of the United States and are "United States persons" within the meaning of the statute. 50 U.S.C. § 1801(i). As such, the definition of "agent of a foreign power" which applies to "any person other than a United States person" is inapplicable here. 50 U.S.C. § 1801(b)(1). The Russian Federation is a "foreign power" within the meaning of the statute. 50 U.S.C. § 1801(a).

**MOTION TO SUPPRESS FISA-DERIVED EVIDENCE OR IN THE ALTERNATIVE
TO DISCLOSE FISA MATERIALS**

violated.  Then, the court must decide whether the application materials include sufficient facts to justify the belief that the target has engaged in behavior that violates those statutes.

Second, in order for there to be probable cause to believe that the target is an "agent of a foreign power," there must be probable cause to believe that person is engaged in "intelligence gathering" activities.  It is clear that knowingly engaging in clandestine intelligence-gathering activities is a necessary predicate to any finding that an individual is an agent of a foreign power under the statute.  Although "intelligence gathering activities" is not defined by statute, "foreign intelligence information" is:

> (1)  information that relates to, and if concerning a United States person is necessary to, the ability of the United States to protect against –
>
> (A)  actual or potential attack or other grave hostile acts of a foreign power or an agent of a foreign power;
>
> (B)  sabotage, international terrorism, or the international proliferation of weapons of mass destruction by a foreign power or by an agent of a foreign power;
>
> (C)  clandestine intelligence gathering activities by an intelligence service or network of a foreign power or by an agent of a foreign power; or
>
> (2)  information with respect to a foreign power or foreign territory that relates to, and if concerning a United States citizen, is necessary to --
>
> (A) the national defense or security of the United States; or
>
> (B) the conduct of the foreign affairs of the United States.

50 U.S.C. § 1801(e).

Nathaniel Nicholson allegedly collected information concerning his father, who is a United States person.  *See, e.g.* Search Warrant Affidavit pp. 24, 26.  Therefore, such information must be "necessary to," for example, the ability of the United States to protect

**MOTION TO SUPPRESS FISA-DERIVED EVIDENCE OR IN THE ALTERNATIVE TO DISCLOSE FISA MATERIALS**

against attack or other hostile acts of a foreign power.  It is difficult to imagine how information regarding Harold Nicholson's family, health, or incarceration is necessary for the United States' ability to protect against hostile acts of a foreign power.

The government's argument that probable cause existed has been redacted in its entirety. The defense has no information regarding the investigation of Nathaniel and Harold Nicholson around the time of the FISA application.  However, later in the investigation, the government applied for an ordinary search warrant, which was supported by the affidavit of FBI Special Agent Jared Garth.  Special Agent Garth at no point in his affidavit indicated that the government had probable cause to believe that Nathaniel Nicholson engaged in acts of espionage or the transfer of foreign intelligence information.

One court has noted that, although the phrase "clandestine intelligence activities" is not defined in FISA, there is evidence that its drafters "viewed these activities in light of the criminal espionage laws, including 18 U.S.C. §§ 793 and 794, and considered that such activities would include, for example, collection or transmission of information or material that is not generally available to the public." *United States v. Rosen*, 447 F.Supp.2d 538, 547 (E.D. Va. 2006) (citation and quotation omitted).

Special Agent Garth's affidavit focused on the communication between Nathaniel Nicholson and representatives of the Russian Federation, the logistics of his foreign travel, and the collection and distribution of what was characterized as Harold Nicholson's "pension."  See Search Warrant Affidavit p.14.  Even if this information is sufficient to demonstrate that there was probable cause to believe that Nathaniel Nicholson was acting as an unregistered agent of a foreign power or engaged in money laundering, a similar showing is simply not sufficient in the FISA context.  FISA requires probable cause to believe that an individual is an agent of a foreign

**MOTION TO SUPPRESS FISA-DERIVED EVIDENCE OR IN THE ALTERNATIVE TO DISCLOSE FISA MATERIALS**

government by virtue of their collection and dissemination of substantive foreign intelligence information.  The mere showing that Nathaniel Nicholson engaged in surreptitious behaviors is plainly insufficient in this context.

By the same token, the government's current theory is that the purpose of Nathaniel Nicholson's contacts with representatives of the Russian Federation was to collect the proceeds of Harold Nicholson's past espionage activities.  This is also insufficient to support a finding that Nathaniel Nicholson was an agent of a foreign power under FISA because such activities do not involve the foreign intelligence gathering activities required by the statute.

**B.      Other necessary findings**

Apart from the probable cause assessment, a judge must also review the application to ensure that it meets the additional standards set out by statute. Here, the authority of the reviewing court to review the certifications of the executive branch is no greater than the FISC court.  *See, e.g. United States v. Campa*, 529 F.3d 980, 993 (11th Cir. 2008).  Since a reviewing court examines FISA materials de novo, however, no deference is accorded to the FISC judge's assessment of the executive branch certifications.

First, the court must find that:  (1) the application was made by a Federal officer, (2) the application was approved by the Attorney General, and (3) the proposed minimization procedures meet the statutory definitions of minimization contained in 50 U.S.C. §§ 1805(a) for electronic surveillance, and § 1821(4) for physical searches.  50 U.S.C. §§ 1805(a), 1824(a).

Second, the court must find that the application contains the statements and certifications required by statute, and that those statements and certifications were made by a designated official.  50 U.S.C. §§ 1805(a)(4), 1824(a)(4).  The following statements and certifications must accompany any application for an order approving searches and surveillance under FISA:

**MOTION TO SUPPRESS FISA-DERIVED EVIDENCE OR IN THE ALTERNATIVE TO DISCLOSE FISA MATERIALS**

-       A statement of the proposed minimization procedures;

-       A statement of the nature of the foreign intelligence information sought and the type of communications or activities to be subjected to the surveillance, or the manner in which the physical search is to be conducted;

-       Certifications by an authorized official that:

    •       the certifying official deems the information sought to be foreign intelligence information;

    •       a significant purpose of the search is to obtain foreign intelligence information;

    •       that such information cannot reasonably be obtained by normal investigative techniques; and

-       A statement explaining the basis for the certifications above.

50 U.S.C. §§ 1804(a), 1823(a).  Since the target of the surveillance, Nathaniel Nicholson, is a United States person, the court must assess these statements and executive branch certifications to determine that they are not "clearly erroneous." 50 U.S.C. §§ 1805(a)(4), 1824(a)(4).  A "clearly erroneous" finding is established when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co*., 333 U.S. 364, 395 (1948).

        The judicial oversight in this arena can fairly be characterized as minimal, insofar as neither the FISC judge nor the reviewing court is to "second-guess" the certifications of the executive branch.  *See, e.g. United States v. Duggan*, 743 F.2d 59, 77 (2nd Cir 1984).  However, the existence of a judicial check on the assertions of the executive branch in the FISA context is

**MOTION TO SUPPRESS FISA-DERIVED EVIDENCE OR IN THE ALTERNATIVE**
**TO DISCLOSE FISA MATERIALS**

vital to FISA's legality, and though the court does not engage in a searching review of these certifications, the judiciary should not simply be a rubber stamp on the executive's certifications.

### C.  *Franks* and *Leon* in the FISA context

The principles of *Franks v. Delaware*, 438 U.S. 154 (1978), apply in the FISA context as well.  *United States v. Duggan*, 743 F.2d 59, 77 n.6 (2nd Cir 1984).

FISA applications are not immune from the misstatements and omissions that are typically addressed by a *Franks* hearing in the Title III context.  The Foreign Intelligence Surveillance Court has mentioned that errors have been discovered in more than 75 FISA applications.  *In re All Matters Submitted to the Foreign Intelligence Surveillance Court*, 218 F.Supp.2d 611, 620 (FISC 2002).  In particular, it is troubling that in virtually all of these instances, "the government's misstatements and omissions in FISA applications and violations of the Court's orders involved information sharing and unauthorized disseminations to criminal investigators and prosecutors." *Id.* at 621.  Inaccuracies such as these do not implicate the primary purpose of FISA, which is the collection of foreign intelligence, but the resultant use of evidence in criminal prosecutions.  Such examples tie the investigating officers very closely to prosecuting authorities and demonstrate that the use of FISA-derived information in criminal contexts is considered at very early stages in the investigation.

Criminal defendants, on the other hand, are in a difficult position when FISA-derived evidence is to be used against them at trial.  It is especially difficult, if not impossible, for a criminal defendant to make the requisite *Franks* showing in the FISA context: because defendants "do not know what statements were made by the affidavit in the FISA applications, they cannot make any kind of a showing that those statements were false." *United States v. Mubayyid*, 521 F.Supp.2d 125, 131 (D. Mass. 2007); *See also Belfield*, 692 F.2d at 148.

**MOTION TO SUPPRESS FISA-DERIVED EVIDENCE OR IN THE ALTERNATIVE TO DISCLOSE FISA MATERIALS**

Nevertheless, since Congress has opted for an *in camera* review process to substitute for the familiar and otherwise critical protections of the adversary process, the important responsibility of conducting a thorough and exacting *Franks* review rests solely with the Court.[2] For example, the court may search for "facial inconsistencies," or other reasons to doubt the representations made by the government in its applications.  *See Rosen*, 447 F.Supp.2d at 546.

One Circuit Court has reasoned that the Fourth Amendment would not warrant the exclusion of evidence seized pursuant to a defective FISA order so long as well-trained officers were entitled to rely on it in good faith.  *United States v. Ning Wen*, 477 F.3d 896, 897-98 (2nd Cir. 2006), citing *United States v. Leon*, 468 U.S. 897 (1984).  In that case, however, the issue was whether the authorization to intercept communications was flawed because its purpose was arguably criminal investigation and should therefore have been issued under Title III.  *Id*.  This reasoning does not apply to the suppression remedy authorized by FISA itself. *See id.* at 898 (concluding that the statutory requirements have been satisfied).  Those statutes make clear that if the surveillance or physical search "was not lawfully authorized or conducted, (the court) *shall*, in accordance with the requirements of law, suppress evidence which was unlawfully obtained or derived from" the surveillance or search. 50 U.S.C. §§ 1806(g), 1825(h) (emphasis supplied).

Moreover, the reasoning underlying the good-faith exception in *Leon* does not apply to evidence obtained in violation of the Fourth Amendment in the FISA context.  Even if the exclusionary rule is not a "necessary corollary" of Fourth Amendment rights, its deterrent effect functions to safeguard those rights.  *Leon*, 468 U.S. at 905-06.  The deterrent effect of the

---

[2] This is true of course unless the Court agrees with Mr. Nicholson that a thorough and exacting *Franks* review can only be conducted by defense counsel.

**MOTION TO SUPPRESS FISA-DERIVED EVIDENCE OR IN THE ALTERNATIVE TO DISCLOSE FISA MATERIALS**

exclusion of illegally obtained evidence depends on "alter[ing] the behavior of individual law enforcement officers or the policies of their departments." *Id*. at 918. Even in the context of ordinary warrants, this requires a case-by-case assessment to determine whether exclusion will further the purposes of the exclusionary rule. *Id*. at 918.

Investigations involving FISA searches and surveillance are different in kind from ordinary criminal investigations: "FISA is meant to take into account the differences between ordinary criminal investigations to gather evidence of specific crimes and foreign counterintelligence investigations to uncover and monitor clandestine activities." *United States v. Sarkissian*, 841 F.2d 959, 965 (9th Cir. 1988) (citation and quotation omitted).

The deterrent effects of exclusion are much stronger in the FISA context than in the context of ordinary warrants. Very few FISA authorizations are issued in comparison to search warrants, and the federal officers who apply for such authorizations are heavily involved in all the stages of a case compared to the officers charged with executing an ordinary search warrant. These federal officers conduct the investigation and the concomitant searches or surveillance, and participate substantially in the preparation and conduct of any resulting criminal trial. Suppression of evidence derived from flawed FISA applications is therefore highly likely to influence the conduct of the officers who apply for and execute FISA orders.

Moreover, suppression of FISA evidence in a criminal trial does not frustrate the essential purposes of FISA. These searches are not conducted to gather evidence for use in a later prosecution, but are for the purpose of gathering foreign intelligence information. *Sarkissian*, 841 F.2d at 965; 50 U.S.C. § 1801(e).

The Supreme Court also relied on the "detached and neutral role" of the magistrate in issuing search warrants as a check on the conduct of law enforcement. *Id*. at 926. This

neutrality explains why, in the context of an ordinary warrant, a magistrate's probable cause determination is entitled to substantial deference. *Id.* at 914. The role of a FISC judge is slightly, but significantly, different than that of an ordinary judge or magistrate. FISA authorizations are the raison d'être for a FISC judge, and the applications and orders are surrounded by almost complete secrecy. When FISA-derived evidence is used at a criminal trial, the one-sided and *ex parte* nature of the review process means that the FISC judge's probable cause determination is not entitled to deference and the reviewing court engages in the same inquiry as the FISC judge. Thus, the reviewing court serves as the same kind of check on the conduct of law enforcement as the FISC. However, since the reviewing court is not in a position to deny an application for a FISA search, it may only check the conduct of law enforcement by ordering suppression of illegally obtained evidence.

*Leon*'s reasoning can not be transferred to the FISA context, when the purpose of FISA authorizations is gathering foreign intelligence information, and its use in criminal prosecutions is so secondary. The systemic costs of suppression are not high, do not frustrate the primary purpose of FISA, and the deterrent effects upon law enforcement are likely to be substantial.

## V.       Review of compliance with FISA order and minimization requirements

Finally, the court should review the conduct of the FISA searches and surveillance to ensure that the government is in compliance with the FISC judge's order and the required minimization procedures. 50 U.S.C. §§1801(h) 1805(c)(2)(A), 1824 (c)(2)(A).

In making this assessment, the court should consider, for example, whether foreign intelligence information was actually collected pursuant to the FISA order and whether the logs include a large amount of non-foreign intelligence information. *See, e.g. Belfield*, 692 F.2d at 147; *Ott*, 827 F.2d at 476. For example, in the instant case, it appears as if most, if not all, of the

conversations monitored on Nathaniel Nicholson's phone were with his friends and family.  At no point does the government allege that Nathaniel communicated with representatives of the Russian Federation or transferred foreign intelligence information by phone.  The court should assess whether, if any, foreign intelligence information was collected via the FISA-authorized electronic surveillance of Nathaniel Nicholson.

A FISA order may only authorize electronic surveillance and searches for a period of 90 days, or until the purpose of the search or surveillance has been accomplished, whichever is less. 50 U.S.C. §§ 1805(d)(1); 1824(d)(1).  A reviewing court should assess the orders and the searches and surveillance conducted under their authority to ensure that they complied with these time limitations.

In the case of physical searches, the FISC judge must order "that the Federal officer conducting the search promptly report to the court the circumstances and results of the physical search." 50 U.S.C. § 1824(c)(2)(E).  A reviewing court should inquire whether the circumstances and results of the physical search were appropriately reported to the FISC.

## VI.  Alternatively, the Court should disclose the FISA materials for counsel's review

If following *in camera* review of the applications, orders or other materials, the Court cannot conclude whether the surveillance or physical searches were lawfully authorized and conducted, the Court should allow defense counsel to review those materials.

FISA itself leaves open the possibility that the decision to disclose FISA materials to the defense would not turn solely on the executive branch's claim of privilege.  FISA provides that, in determining the legality of the surveillance, "the court may disclose to the aggrieved person, under appropriate security procedures and protective orders, portions of the application, order, or other materials relating to the surveillance only where such disclosure is necessary to make an

**MOTION TO SUPPRESS FISA-DERIVED EVIDENCE OR IN THE ALTERNATIVE TO DISCLOSE FISA MATERIALS**

accurate determination of the legality of the surveillance." 50 U.S.C. §§ 1806(f), § 1825(g) (physical searches).  Disclosure is therefore warranted when a court needs the defense attorney's input to decide whether to suppress evidence obtained through a FISA order.

Disclosure and an adversary hearing are warranted when the question of legality is "complicated" by any number of factors.  *See, e.g. Belfield*, 692 F.2d at 147; *Ott*, 827 F.2d at 476.  As detailed above, there are a number of factors that warrant disclosure to the defense in this case.  The court's assessment is complicated further by the fact that the target of foreign intelligence surveillance is, in this case, a United States person.  As such, the court must assess the degree to which probable cause is based on protected First Amendment activities, and whether the intelligence information purportedly collected by Nathaniel Nicholson relating to his father "is necessary to" the ability of the United States to protect against foreign hostilities or conduct its foreign relations. 50 U.S.C. §§ 1801(e), 1805(a)(2), 1824(a)(2).  Finally, the court is at a disadvantage in assessing and investigating potential *Franks* issues in the affidavits as compared to defense counsel.  The legality of FISA applications is not cut-and-dried.  *See, e.g. In re All Matters*, 218 F.Supp.2d at 620-21 (detailing irregularities in over 75 FISA applications, and indicating that "the government's misstatements and omissions in FISA applications and violations of the Court's orders involved information sharing and unauthorized disseminations to criminal investigators and prosecutors.").

Accordingly, the Court should allow defense counsel to review these materials in order to assist the Court with its analysis.

**VII.    Conclusion**

For the foregoing reasons, Mr. Nicholson's Motion to Suppress FISA Derived Evidence should be granted.  Alternatively, the Court should disclose the applications, orders or other materials to defense counsel.

DATED this 5th day of March, 2010.

GARVEY SCHUBERT BARER

**MOTION TO SUPPRESS FISA-DERIVED EVIDENCE OR IN THE ALTERNATIVE
TO DISCLOSE FISA MATERIALS**

By   s/ Samuel C. Kauffman
      Samuel C. Kauffman, OSB #94352
      Telephone: (503) 228-3939
      Facsimile: (503) 226-0259
      Email: skauffman@gsblaw.com

      Attorneys for Defendant
      Harold James Nicholson

PDX_DOCS:447117.2 [37444-00100]

**MOTION TO SUPPRESS FISA-DERIVED EVIDENCE OR IN THE ALTERNATIVE
TO DISCLOSE FISA MATERIALS**