FILED'10 APR 21 7:39USDC-ORP

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**PORTLAND DIVISION**

**UNITED STATES OF AMERICA**

**Plaintiff,**

**v.**

**HAROLD JAMES NICHOLSON,**

**Defendant.**

**09-CR-40-BR**

**OPINION AND ORDER**

**DWIGHT C. HOLTON**
United States Attorney
**PAMALA R. HOLSINGER**
**ETHAN D. KNIGHT**
Assistant United States Attorneys
1000 S.W. Third Ave., Suite 600
Portland, OR 97204
(503) 727-1000

Attorneys for Plaintiff

**SAMUEL C. KAUFFMAN**
Garvey Schubert Barer
121 S.W. Morrison, 11th Floor
Portland, OR 97204
(503) 228-3939

Attorneys for Defendant Harold James Nicholson

**BROWN, Judge.**

This matter comes before the Court on Defendant Harold James Nicholson's Motion (#54) for Disclosure of FISA Applications and Order and his Motion (#117) to Suppress FISA-Derived Evidence. The Court held a hearing in chambers on March 29, 2009.[1]

For the following reasons, the Court **DENIES** Defendant's Motion For Disclosure of FISA Application and **DENIES** Defendant's Motion to Suppress FISA-Derived Evidence.

## BACKGROUND

Defendant Harold James Nicholson (hereinafter referred to as Nicholson) is a former CIA operations officer who pled guilty in 1997 to Conspiracy to Commit Espionage by selling classified national-defense information to the Russian Federation for $300,000. He is serving a 283-month sentence at the Federal Correctional Institution (FCI) in Sheridan, Oregon.

---

[1]Defendant's Motion (#117) to Suppress is also intended as a Reply to his Motion (#54) for Disclosure of FISA Applications and Orders.

On January 27, 2009, a Grand Jury indicted Nicholson and his son, Nathaniel Nicholson (Nathaniel), on one count of Conspiracy to Act as an Agent of a Foreign Government without Prior Notification of the Attorney General under 18 U.S.C. §§ 371 and 951(a), one count of Acting as an Agent of a Foreign Government without Prior Notification of the Attorney General under 18 U.S.C. § 951(a), one count of Conspiracy to Commit Money Laundering in violation of 18 U.S.C. § 1956(h), and four counts of money laundering under 18 U.S.C. § 1956(a)(2)(B)(I). The government alleges Nicholson secretly gave Nathaniel written information during Nathaniel's prison visits to Nicholson at FCI Sheridan and directed Nathaniel to deliver the information to a Russian consulate and collect monies in return from the Russian Federation for Nicholson's past espionage activities.

**DISCUSSION**

Nicholson seeks disclosure to his counsel of all evidence obtained by the government during the course of its investigation that involved surveillance and searches conducted pursuant to court orders issued by the Foreign Intelligence Surveillance Court (FISC) under the Foreign Intelligence Surveillance Act (FISA), 50 U.S.C. § 1801, *et seq*.

Nicholson also seeks to suppress evidence obtained by the government pursuant to FISA-authorized surveillance and searches.

Nicholson's defense counsel, who has a top-secret security clearance for purposes of his representation of Nicholson in this case, seeks to review the government's classified materials submitted to the FISC in support of its applications for the FISA searches and surveillance as well as any classified evidence that the government obtained during the course of its surveillance of Nathaniel and the searches of Nathaniel's automobile and home between October 2007 and December 2008.

In response to Nicholson's Motions, the government requests, pursuant to 50 U.S.C. § 1825(f)(2)(g), that the Court: (1) conduct an *in camera, ex parte* review of the FISA "dockets," (*i.e.*, the government's affidavits, applications and other material filed with the FISC and the government's classified Memorandum); (2) based on that review, issue an order that the FISA procedure used by the government was lawfully authorized and the evidence was lawfully collected; and (3) issue an order directing that the FISA information should not be disclosed to the defense and that it remain with the United States under seal.

## RELEVANT FISA PROVISIONS

### A. Required Contents of a FISA Application.

50 U.S.C. § 1804 (a) provides:

> Each application for an order approving electronic surveillance under this subchapter shall be made by a Federal officer in writing

upon oath or affirmation to a judge having jurisdiction under section 1803 of this title. Each application shall require the approval of the Attorney General based upon his finding that it satisfies the criteria and requirements of such application as set forth in this subchapter. It shall include-

(1) the identity of the Federal officer making the application;

(2) the identity, if known, or a description of the specific target of the electronic surveillance;

(3) a statement of the facts and circumstances relied upon by the applicant to justify his belief that--

(A) the target of the electronic surveillance is a foreign power or an agent of a foreign power; and

(B) each of the facilities or places at which the electronic surveillance is directed is being used, or is about to be used, by a foreign power or an agent of a foreign power;

(4) a statement of the proposed minimization procedures;

(5) a description of the nature of the information sought and the type of communications or activities to be subjected to the surveillance;

(6) a certification or certifications by the Assistant to the President for National Security Affairs, an executive branch official or officials designated by the President from among those executive officers employed in the area of national security or defense and appointed by the President with the advice and consent of the Senate, or the Deputy Director of the Federal Bureau of

Investigation, if designated by the President as a certifying official--

(A) that the certifying official deems the information sought to be foreign intelligence information;

(B) that a significant purpose of the surveillance is to obtain foreign intelligence information;

(C) that such information cannot reasonably be obtained by normal investigative techniques;

(D) that designates the type of foreign intelligence information being sought according to the categories described in section 1801(e) of this title; and

(E) including a statement of the basis for the certification that--

(I) the information sought is the type of foreign intelligence information designated; and

(ii) such information cannot reasonably be obtained by normal investigative techniques;

(7) a summary statement of the means by which the surveillance will be effected and a statement whether physical entry is required to effect the surveillance;

(8) a statement of the facts concerning all previous applications that have been made to any judge under this subchapter involving any of the persons, facilities, or places specified in the application, and the action taken on each previous application; and

(9) a statement of the period of time for which the electronic surveillance is required to be maintained, and if the nature of the intelligence gathering is such that the

> approval of the use of electronic surveillance under this subchapter should not automatically terminate when the described type of information has first been obtained, a description of facts supporting the belief that additional information of the same type will be obtained thereafter.

B. ***In-Camera* Review of FISA Applications**.

50 U.S.C. § 1806(e) provides in relevant part:

> Any person against whom evidence obtained or derived from an electronic surveillance to which he is an aggrieved person is to be . . . introduced or otherwise used or disclosed in any trial . . . may move to suppress the evidence . . . .

50 U.S.C. § 1806(f) provides in relevant part:

> [W]henever any motion or request is made by an aggrieved person . . . to discover or obtain applications or orders or other materials relating to electronic surveillance or to discover, obtain, or suppress evidence or information obtained or derived from electronic surveillance under [FISA], . . . *the United States district court . . . shall if the Attorney General files an affidavit under oath that disclosure or an adversary hearing would harm the national security of the United States, review in camera and ex parte the application, order, and such other materials relating to the surveillance* as may be necessary to determine whether the surveillance of the aggrieved person was lawfully authorized and conducted. In making this determination, *the court may disclose to the aggrieved person . . . materials relating to the surveillance only where such disclosure is necessary to make an accurate determination of the legality of the surveillance.*

Emphasis added.

50 U.S.C. § 1806(g) provides in relevant part:

> If the [Court] determines that the surveillance was lawfully authorized and conducted, it shall deny the motion of the aggrieved person *except to the extent that due process requires discovery or disclosure.*

Emphasis added.

The same *in-camera* review procedures authorize the Court to decide motions to suppress FISA evidence based on inadequate minimization procedures. 50 U.S.C. § 1825(f) and (g).

**DEFENDANT'S MOTION FOR DISCLOSURE OF FISA APPLICATIONS**

Defendant moves for an order permitting his counsel to review the government's classified materials submitted to the FISC in support of its applications for FISA searches and surveillance as well as any classified evidence that the government obtained during the course of its surveillance of Nathaniel and the searches of Nathaniel's automobile and home between October 2007 and December 2008.

The government opposes Defendant's Motion and requests this Court conduct an *in camera, ex parte* review of the government's FISA applications to determine whether the FISA surveillance and searches were lawful.

**A. *In-Camera* Review.**

FISA's *in-camera* review provisions have been held to be constitutional. *See U.S. v. Isa,* 923 F.2d 1300, 1307-08

(8th Cir. 1991)(Sixth Amendment right of confrontation is not violated by FISA's *in-camera* review procedure). In *United States v. Belfield*, the court made clear that disclosure of FISA materials to defense counsel is not the rule:

> The language of section 1806(f) clearly anticipates that an *ex parte, in camera* determination is to be the rule. Disclosure and an adversary hearing are the exception, occurring *only* when necessary. The legislative history explains that such disclosure is "necessary" only where the court's initial review of the application, order, and fruits of the surveillance indicates that *the question of legality may be complicated by factors such as "indications of possible misrepresentation of fact, vague identification of the persons to be surveilled, or surveillance records which include a significant amount of nonforeign intelligence information, calling into question compliance with the minimization standards contained in the order."*

692 F.2d 141, 147 (D.C. Cir. 1982)(emphasis added).

If the Court's *in camera, ex parte* review raises a concern as to the foundation or justification for the FISA surveillance order (*i.e.*, the legality of the FISA surveillance), the material requested by Defendant may be disclosed. *See U.S. v. Islamic Am. Relief Agency*, No. 0700087-CR-W-NKL, 2009 WL 5169536, at *3 (W.D. Mo. Dec. 21, 2009). After an *in-camera* review, the court "has the discretion to disclose portions of the documents, under appropriate protective procedures, *only if [the court] decides that such disclosure is necessary to make an accurate*

*determination of the legality of the surveillance." U.S. V. Duggan,* 743 F.2d 59, 78 (2d Cir. 1984)(emphasis added).

As part of its FISA application materials in this case, the government submitted a certification in the form of a Declaration and Claim of Privilege from the Attorney General that "the unauthorized disclosure of the FISA Materials could be expected to cause exceptionally grave damage [and/or] serious damage to the national security of the United States."

In accordance with 50 U.S.C. § 1806(f), the Court has conducted an *in-camera* review of the government's application and certification materials presented to the FISC.

**B. <u>Disclosure to Defense Counsel</u>.**

On March 24, 2010, the government filed a Certification (#122) that it has disclosed all otherwise classified information to which Defendant is entitled under Federal Rule of Criminal Procedure 16, 18 U.S.C. § 3500 (the *Jencks Act),* and *Brady v. Maryland,* 373 U.S. 83 (1963). Nevertheless, Nicholson contends all of the government's FISA application materials and certifications should be disclosed to his attorney. The Court disagrees.

Based on its review of the government's certifications, applications, and affidavits that were submitted to the FISC, the Court finds disclosure to defense counsel of the government's FISA applications and supporting documents is not necessary in

order to make an accurate determination as to the legality of the government's searches of Nathaniel's automobile and home or the government's surveillance of Nathaniel during the period in question. Specifically, the court concludes the Attorney General's Declaration in support of the use of an *in-camera* review was sufficient. The Attorney General declared "it would harm the national security of the United States to publicly disclose or have an adversarial hearing with respect to the FISA Materials." Nevertheless, Nicholson contends disclosure limited to his counsel would not constitute a "public" disclosure. Assuming Nicholson's parsing of the word "publicly" in this context has significance, the Attorney General also asserted that an adversarial hearing regarding the FISA materials would harm the national security of the United States. Moreover, the fact that Nicholson's defense counsel has a high-level security clearance does not strengthen Nicholson's argument. In *U.S. v. Ott*, 827 F.2d 473, 477 (9th Cir. 1987), the defendant similarly argued disclosure of FISA materials to his attorneys who had high-level security clearances "would not entail or risk dissemination of sensitive information to non-cleared personnel." The court, however, "reject[ed] the notion that a defendant's due process right to disclosure of FISA materials turns on the [security] qualifications of his counsel."

Based on its *in-camera* review and after considering the argument of defense counsel, the Court concludes the Attorney General's FISA certification was adequate and the disclosure of FISA materials to defense counsel is neither required nor appropriate in this case.

## DEFENDANT'S MOTION TO SUPPRESS

Nicholson contends evidence obtained through FISA-related searches and surveillance related to Nathaniel and offered by the government in its case against Nicholson should be suppressed for lack of probable cause in light of unclassified evidence that has been disclosed.

### A. Scope of Review.

In *U.S. v. Rosen,* the district court held its *in-camera* review of the sufficiency of the government's materials that were submitted to support a FISA application is properly conducted "*de novo,*" and, therefore, "no deference [is] accorded to the FISC's probable cause determinations." 447 F. Supp. 2d 538, 545 (E.D. Va. 2006). Nevertheless, certifications contained in applications for FISA surveillance orders are "presumed valid." *Id. See also U.S. v. Pelton,* 835 F.2D 1067, 1076 (4th Cir. 1987)(When "the statutory application was properly made and earlier approved by a FISA judge, it carries a strong presumption of veracity and regularity in a reviewing court.").

B. **Adequacy of FISC's "Probable Cause" Determination.**

Nicholson contends the government did not have probable cause to support surveillance and searches relating to Nathaniel. Specifically, Nicholson asserts a search warrant obtained by the FBI in its criminal investigation of Nathaniel did not support any inference that Nathaniel was an "agent of a foreign power" or "engaged in acts of espionage or the transfer of foreign intelligence information."

The government responds the contents of its affidavit presented in the District Court for the District of Oregon in support of a search warrant as to Nathaniel did not pertain to the specific FISA issues presented to the FISC and, therefore, is irrelevant. The Court agrees. In addition, the government asserts it was not required to describe Nathaniel as an agent of a foreign power engaged in clandestine intelligence-gathering to justify its FISA searches and surveillance and only had to present probable cause to support a finding that Nathaniel "knowingly aided and abetted any person" who was engaged in those activities. *See* 50 U.S.C. § 1801(b)(1) and (2)(E) and 50 U.S.C. § 1821(1)(minimization). The Court agrees.

Based on its *in camera, ex parte* review, this Court finds the government presented sufficient evidence in its FISA applications to establish probable cause for the searches of Nathaniel's automobile and home and for the surveillance of

Nathaniel. The Court also finds the government's applications met the requirements of FISA in each of these particulars:

1. The federal officer(s) making the applications were identified;

2. The target(s) of the searches and/or electronic surveillance were identified, and they included a foreign power, (*i.e.*, the Russian Federation and/or an agent of the Russian Federation);

3. Each of the facilities or places that were the subjects of the searches and/or electronic surveillance were being used or were about to be used by the Russian Federation or an agent of the Russian Federation;

4. The applications include adequate statements of the proposed minimization procedures that were to be employed;

5. The applications include an adequate description of the nature of the information sought and the type of communications or activities to be subjected to the searches and/or surveillance;

6. The applications include an adequate certification[s] by an appropriate executive-branch official –

a. that the certifying official deemed the information sought to be foreign-intelligence information;

b. that a significant purpose of the surveillance was to obtain foreign-intelligence information;

c. that such information could not reasonably be obtained by normal investigative techniques;

d. that designates the type of foreign-intelligence information sought according to the categories described in § 1801(e) of FISA; and

e. include a statement of the basis for the certification that--

(1) the information sought was the type of foreign-intelligence information designated; and

(2) such information could not reasonably be obtained by normal investigative techniques.

7. The applications include a summary statement of the means by which the surveillance would be effected and a statement as to whether physical entry was required to effect the surveillance;

8. The applications include a statement of the facts concerning all previous applications that were made to any judge involving any of the persons, facilities, or places specified in the application and the action taken on each previous application; and

9. The applications include a statement of the period for which the electronic surveillance was to be maintained and, if the nature of the intelligence gathering was such that the approval of the use of electronic surveillance should not automatically terminate when the described type of information

was first obtained, a description of facts supporting the belief that additional information of the same type would be obtained thereafter.

Following its *de novo*, *in-camera* review, the Court finds on this record that the government (1) presented probable cause to the FISC for its FISA-authorized searches and electronic surveillance as to Nathaniel Nicholson, (2) utilized appropriate minimization procedures to ensure the electronic surveillance and physical searches focused on the gathering of foreign-intelligence information and did not exceed the bounds of the FISA-authorized electronic surveillance and physical searches, (3) gathered foreign-intelligence information as a result of the FISA surveillance, and (4) did not exceed any time limits imposed for the surveillance and searches.

Finally, in the course of its *de novo*, *in-camera* review of the government's FISA applications, the Court did not find any basis for concern that false statements or declarations were made to support the FISA applications or certifications. To the extent the applications contained any errors or omissions, the scope and detail of the information provided in the applications in support of the surveillance and searches leads the Court inexorably to the conclusion that the evidence gathered from the FISA surveillance and searches should not be excluded. *See U.S. v. Leon,* 468 U.S. 897 (1984).

**CONCLUSION**

For these reasons, the Court **DENIES** Defendant Harold Nicholson's Motion (#54) for Disclosure of FISA Applications and Orders and **DENIES** his Motion (#117) to Suppress FISA-Derived Evidence.

IT IS SO ORDERED.

DATED this 20th day of April, 2010.

Anna J. Brown

ANNA J. BROWN
United States District Judge